UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MELISSA TROSTLE,

                            Plaintiff,

    v.                                                          Civil Action No.: 1:13-CV-0709
                                                                        (FTS/RFT)

THE STATE OF NEW YORK,
THERESA KNAPP-DAVID, and
DOUG BOTSFORD,

                            Defendants.

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Respectfully Submitted By:

Elmer Robert Keach, III, Esquire
Maria K. Dyson, Esquire
LAW OFFICES OF ELMER ROBERT
        KEACH, III, PC
One Pine West Plaza, Suite 109
Albany, NY 12205
Telephone: 518.434.1718
Telecopier: 518.770.1558
Electronic Mail:
bobkeach@keachlawfirm.com

TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

Introduction ...................................................................................................................1

Factual Background ........................................................................................................2

Standard of Review ........................................................................................................2

Argument .......................................................................................................................3

I.   PLAINTIFF TIMELY FILED HER ADMINISTRATIVE COMPLAINT WITH THE NEW YOK STATE DIVISION OF HUMAN RIGHTS ....................................................................4

II.  DEFENDANTS VIOLATED TITLE VII BY RETALIATING AGAINST PLAINTIFF AFER SHE INTERNALLY COMPLAINED ABOUT DISCRIMINATION IN THE WORKPLACE ........................................................................................................ 5

     A.  Plaintiff Has Established a Prima Facie Case of Retaliation ...............................5

          (1)  Plaintiff Engaged in Protected Activity When She Informally Complained About Discrimination to Defendant Botsford .......................................................6

          (2)  The Defendants Were Aware Plaintiff Had Engaged in Protected Activity ..............7

          (3)  Being Demoted and Suffering a Substantial Pay Cut Constitutes an Adverse Employment Action ................................................................................8

          (4)  Defendants Retaliated Against Plaintiff Less than a Month After Her Informal Complaint .............................................................................................8

     B.  Plaintiff has Substantial Direct and Circumstantial Evidence of Pretext .........................10

III. DEFENDANT STATE OF NEW YORK IS PLAINTIFF'S EMPLOYER. IN THE ALTERNATIVE, THE DEFENDANTS HAVE WAIVED THIS DEFENSE BY FAILING TO RAISE IT, CAUSING PLAINTIFF SUBSTANTIAL PREJUDICE ...............................14

IV.  DEFENDANTS ARE NOT ENTITLED TO THE SAME ACTOR INFERENCE PRESUMPTION ......................................................................................................16

V.   PLAINTIFF'S COMPLAINTS ON SYSTEMIC DISCRIMINATION AGAINST HISPANICS ARE PROTECTED BY THE FIRST AMENDMENT ................................... 17

VI. DEFENDANTS RETALIATED AGAINST PLAINTIFF FOR TAKING FMLA LEAVE . 20

VII.THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER
PLAINTIFF'S STATE LAW CLAIMS...............................................................................23

VIII.DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY GIVEN THE
DISPUTED ISSUES OF MATERIAL FACT.......................................................................24

IX. JEFFREY BRAUDE'S AFFIDAVIT SHOULD BE STRICKEN BECAUSE HE WAS
NEVER IDENTIFIED BY DEFENDANTS DURING DISCOVERY...................................25

Conclusion ..............................................................................................................................25

TABLE OF AUTHORITIES

*Alie v. NYNEX,* 158 F.R.D. 239 (E.D.N.Y. 1994) ........................................................14

*Astor Holdings v. Roski,* 325 F. Supp.2d 251 (S.D.N.Y. 2003)................................15

*Branker v. Pfizer, Inc.,* 981 F. Supp. 862, 865 (S.D.N.Y. 1997).........................4, n.6

*Burdick v. Johnson*, 2007 WL 2932777 (N.D.N.Y. Oct. 4, 2007)................................4

*Carlton v. Mystic Transp. Inc.,* 202 F.3d 129 (2d Cir. 2000) ................................16

*Cifra v. Gen. Elec. Co.,* 252 F.3d 205 (2d Cir. 2001)..............................................8, 10

*Connick v. Myers,* 461 U.S. 138 (1983).........................................................................19

*Cotarelo v. Vill. of Sleepy Hollow Police Dep't,* 460 F.3d 247 (2d Cir. 2006)............19

*Davidson v. Scully*, 114 F.3d 12 (2d Cir. 1997)...............................................................2

*Delaney v. Bank of Am. Corp.,* 766 F.3d 163 (2d Cir. 2014)......................................23

*Doubleday & Co v. Curtis,* 763 F.2d 495 (2d Cir. 1985) .............................................15

*Espinal v. Goord,* 558 F.3d 119 (2d Cir. 2009) .........................................................18

*Galabya v. New York City Bd. of Educ.,* 202 F.3d 636 (2d Cir. 2000)...........................8

*Galdieri-Ambrosini v. Natl Realty & Dev. Corp.,* 136 276 (2d Cir. 1998)..................24

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady County,*
252 F.3d 545 (2d Cir. 2001).............................................................................................8

*Grady v. Affliated Cent., Inc.,* 130 F.3d 553 (2d Cir. 1997) ....................................17

*Griffin v. City of New York*, 880 F. Supp. 2d 384 (E.D.N.Y. 2012) ............................19

*Gryga v. Ganzman,* 991 F. Supp. 105 (E.D.N.Y. 1998)...............................................14

*Hanrahan v. Doling*, 331 F.3d 93 (2d Cir. 2003) ...........................................................2

*Hope v. Pelzer,* 536 U.S. 730 (2002) ............................................................................24

*Hubbard v. Total Commc'ns, Inc.,* 347 F. App'x 679 (2d Cir. 2009) ...................6, 8, 10

*Jemmott v. Coughlin*, 85 F.3d 61, 66 (2d Cir. 1996) ...................................................24

*Kercado –Clymer v. City of Amsterdam*, 370 Fed. Appx. 238 (2d Cir. 2010)..............24

*Kirkland v. Cablevision Systems,* 760 F.3d 223 (2d Cir. 2014)...................................10

*Krupski v. Costa Crociere S.A.,* 130 S.Ct. 2485 (2010) .............................................16

*Levy v. Kosher Overseers Assn. of America,* 2000 WL 294842, * 7
   (S.D.N.Y. March 20, 2000)..........................................................................................15

*Lore v. City of Syracuse,* 670 F.3d 127 (2d Cir. 2012).................................................5

*Matthews v. City of New York, 779 F.3d 167 (2d Cir. 2015)* ..........................................................18

*Matya v. United Refiing Co.*, 323 Fed. Appx. 65 (2d Cir. 2009)...................................................10

*Marosan v. Trocaire College*, 2015 WL 1461665 (W.D.N.Y. Feb. 5, 2015)...............................17

*Memnon v. Clifford Chance US, LLP,* 667 F.Supp.2d 334 (S.D.N.Y. 2009) ...............................17

*Potenza v. City of New York*, 365 F.3d 165 (2d Cir. 2004) ...........................................................21

*Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171 (S.D.N.Y. 2013)...........................................25

*Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597 (2d Cir. 2006) ...............................................3

*Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230 (N.D.N.Y. 2010)...........................................6

*Sterling v. Contec Corp. LLC*, 333 F.Supp.2d 37 (N.D.N.Y. 2004)...............................................4

*Summa v. Hoftsa University*, 708 F.3d 115(2d Cir. 2013)..............................................................5

*Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125 (2d Cir. 1999)...........................................6

<u>INTRODUCTION</u>

The Defendants move this Court for Summary Judgment, claiming there is no disputed material fact underlying Plaintiff Melissa Trostle's claims of retaliation against the State of New York and two of her supervisors, Theresa Knapp-David and Douglas Botsford.  The Plaintiff initially notes for the Court that the primary reason why Ms. Trostle was demoted from her position, and her public service career likely destroyed, was because she failed to pay for $7.00 of alleged personal phone calls made over a fourteen month period, where the phone bills underlying these calls were never even shown to her.  Ms. Trostle's weekly average for "personal" calls was four minutes; her monthly average for these unreimbursed calls was $.50.  Given the petty nature of this and other complaints against the Plaintiff, Ms. Trostle's claims of retaliatory discharge are well-founded and compelling.  Furthermore, Ms. Trostle's arguments are actually based on the factual record in this case--versus self-serving affidavits and the willful omission of material facts. Immediately after Plaintiff Melissa Trostle complained about discrimination in the workplace, the Defendants closely monitored Ms. Trostle, and scrutinized her phone and attendance records. It is undisputed that Ms. Trostle was the only employee who was subjected to this type of scrutiny. Within a month of her second such complaint, the Defendants demoted Ms. Trostle from her position as an Assistant Director of Classification and Movement with the Department of Corrections.

This case represents a textbook example of retaliation based upon an employee's attempt to complain about discrimination. In fact, numerous witnesses employed with the Department of Corrections, and who investigated Ms. Trostle's allegations, after hearing the facts of this case, concluded that Defendants' conduct could be pretext for impermissible retaliation. These witnesses also testified that, had they known that Ms. Trostle had been subjected to disparate

treatment, they likely would have concluded that the Defendants had impermissibly retaliated against her.

Even without these facts, the Defendants' own employees concluded that the manner in which Ms. Trostle was demoted caused them significant concern. Specifically, these witnesses were concerned that defendants' sought the harshest discipline they could for the alleged minor transgressions, instead participating in progressive discipline, as required by the policies and procedures of the Department of Corrections. Plaintiff cannot fathom a stronger case of retaliation, short of the Defendants admitting to it themselves. For these reasons, and those discussed at length below, Plaintiff respectfully requests that the Court deny the Defendants' Motion for Summary Judgment.

## FACTUAL BACKGROUND

Plaintiff Melissa Trostle respectfully refers the Court to her Statement and Counter-Statement of Facts, where she has detailed at length the facts underlying this action.

## STANDARD OF REVIEW

A Motion for Summary Judgment should be denied if there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact. *Davidson v. Scully*, 114 F.3d 12, 14 (2d Cir. 1997). Additionally, Summary Judgment on the basis of qualified immunity is also inappropriate if a rational jury could conclude that it was not objectively reasonable for the defendants to believe that they were acting in a fashion that violated a clearly established right. *Id*. In both instances, the Court should review the facts in the light most favorable to the plaintiff and draw all permissible inferences in the Plaintiff's favor. *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003). In cases involving claims of employment discrimination,

"an extra measure of caution is merited" in granting summary judgment because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006).

<u>ARGUMENT</u>

As an initial matter, Plaintiff voluntarily discontinues her New York State Human Rights Law claim against the State of New York. Next, Defendants argue that Plaintiff cannot hold Defendants Botsford and Knapp-David individually liable under Title VII. However, Plaintiff has not brought Title VII claims against these Defendant, but against the State of New York.   (Exhibit 1, Plaintiff's Complaint). Defendants also spend a large portion of their brief addressing the *McDonell Douglas* burden shifting framework for discrimination claims[4]. However, Plaintiff does not assert a discrimination claim, but rather, asserts retaliation claims under Title VII, the First Amendment, the FMLA, and the New York Human Rights Law. Finally, the Defendants argue that Plaintiff cannot bring a First Amendment claim against the State of New York, but these claims have clearly been made only against the individual defendants.

---

[4] Defendants also claim that Plaintiff cannot meet the first element of a prima facie discrimination claim because she was not qualified for her job. Specifically, Defendants claim that Plaintiff failed to take a civil service exam and would have been subject to immediate termination when an individual became eligible for her position after taking the exam. This argument is disingenuous, as the Defendants did not comply with the requirements of the Civil Service Law as they never offered a civil service exam for Plaintiff's position. Therefore, no one could ever become eligible for this position, However, Defendants' argument is irrelevant because Plaintiff has not brought a discrimination claim, and qualification is not an element of her prima facie Retaliation claims.

## I.      PLAINTIFF TIMELY FILED HER ADMINISTRATIVE COMPLAINT WITH THE NEW YOK STATE DIVISION OF HUMAN RIGHTS.

Defendants argue that Plaintiff failed to file her complaint with the Division of Human Rights complaint within 300 days.[6] As an initial matter, Defendants rely upon the Division of Human Rights' erroneous statement that Plaintiff's Complaint was filed on April 18, 2012. See Exhibit 23 – DHR Order, dated March 5, 2013.  Rather, Plaintiff's Complaint was filed on April 16, 2012, as evidenced by the date stamp on her Complaint attached to this motion as Exhibit 6. See Exhibit 6 – DHR Complaint, dated April 16, 2012. Additionally, Plaintiff admits that she filed 301 days after she received notice of her demotion on June 20, 2011. However, because the 300th day, April 15, 2012, fell on a Sunday, the statute of limitations automatically tolled until the next business day, April 16, 2012, which is when the Plaintiff filed her complaint. Fed.R.Civ.P. 6(a); N.Y. Gen. Constr. Law § 25-a(1); *Burdick v. Johnson*, 2007 WL 2932777, at *1 (N.D.N.Y. Oct. 4, 2007) ("When the final day of the period falls on a weekend or legal holiday, both federal and state law operate to extend the period to the next-occurring business day.") Therefore, Plaintiff's complaint, which was dually filed with the DHR and EEOC pursuant to a work-sharing agreement, was timely filed. *Sterling v. Contec Corp. LLC*, 333 F.Supp.2d 37, 38 (N.D.N.Y. 2004) (The EEOC and DHR have a work-sharing agreement, and as such, charges received by DHR are automatically deemed dual-filed with the EEOC).

---

[6] This argument only applies to the Plaintiff's Title VII claims, as the need to exhaust administrative remedies does not apply to claims under New York Executive Law § 297(9).  *See, Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 865 (S.D.N.Y. 1997).

## II. DEFENDANTS VIOLATED TITLE VII BY RETALIATING AGAINST PLAINTIFF AFER SHE INTERNALLY COMPLAINED ABOUT DISCRIMINATION IN THE WORKPLACE.

The burden-shifting framework laid out in *McDonnell Douglas* governs retaliation claims under both Title VII and the NYSHRL. However, under the NYSHRL, state employees can be held liable for retaliation, so long as they participated in the conduct. *Lore v. City of Syracuse,* 670 F.3d 127, 169 (2d Cir. 2012). Here, the Plaintiff has offered substantial proof that Defendants Knapp-David and Botsford directly participated and conspired to retaliate against her for complaining about discrimination. Therefore, the Title VII and NYSHRL claims are addressed together.

First, a Plaintiff must make out a case of prima facie case of retaliation. Once a prima facie case is established, "the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action. *Summa v. Hofstra University*, 708 F.3d 115, 125 (2d Cir. 2013). If the employer demonstrates a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.* (Internal Citations Omitted).

### A. Plaintiff Has Established A Prima Facie Case of Retaliation

"To make out a prima facie case of retaliation, a plaintiff must make four showings: that "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Summa*, 708 F.3d at 125.

(1) *Plaintiff Engaged in Protected Activity When She Informally Complained About Discrimination to Defendant Botsford.*

To demonstrate participation in a protected activity, a plaintiff in a retaliation case need not prove that the conditions she protested amounted to an actual Title VII violation; she need only establish that she had a good faith, reasonable belief that a violation occurred. *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 134 (2d Cir. 1999). Neither must the plaintiff formally oppose the alleged discriminatory behavior, but also "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 680-81 (2d Cir. 2009); *Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230 (N.D.N.Y. 2010).

For example, the Second Circuit, in a case very similar to this action, determined that an employee's email to her manager complaining about disparate treatment based on gender was activity protected by Title VII.  Hubbard, 347 F. App'x at 680. In this case, Plaintiff testified that she made two informal and verbal complaints of discrimination to Defendant Botsford, her immediate supervisor. First, in February 2011, she complained about the unfair treatment she was receiving from Defendant Knapp-David. See Exhibit 16 – M. Trostle Dep., p. 122-123.  Second, in April 2011, Plaintiff told Defendant Botsford that Knapp-David's conduct towards her had not improved, and that she intended to file a formal complaint if the situation with Knapp-David did not change. *Id.* at 123.  An informal complaint to superiors is one of the many avenues available to DOCCS employees to complain about discrimination in the workplace.  Exhibit 47 – DOCCS Diversity Management Policy.  As discussed above, informal complaints of discrimination are protected by Title VII, and there is no credible dispute on this issue.

(2) *The Defendants Were Aware Plaintiff Had Engaged in Protected Activity.*

Tellingly, Defendants Botsford and Knapp-David do not deny that Plaintiff complained about discrimination, but merely stated that they do not remember these conversations. See Exhibit 9 – D. Botsford Dep., p. 124. Defendants also ignore the compelling testimony given in this case. First, Defendant Botsford did testify that he remembers Plaintiff complaining about being unfairly treated by Defendant Knapp-David, but stated he didn't remember Plaintiff mentioning discrimination. *Id*. Also, two employees from Human Resources, Jean Daniels and Carol Makowski, admitted that Defendant Botsford came to them on several occasions seeking guidance on what adverse actions he could take against Plaintiff. See Exhibit 11 – J. Daniels Dep., p. 11; Exhibit 13 – C. Makowski Dep., p. 20.  These employees stated that Botsford said Plaintiff had complained about being discriminated against by Knapp-David based on her national origin. *Id*. Therefore, Plaintiff has direct evidence that Defendant Botsford knew Plaintiff had engaged in protected activity.

Second, Defendant Knapp-David's secretary, Sethanne Bogardus, testified that she was present for several conversations between Defendant Botsford and Knapp-David where they discussed demoting Ms. Trostle, but denied hearing anything pertaining to discrimination.  See Exhibit 8 – S. Bogardus Dep., p. 95. However, given Knapp-David and Botsford discussed demoting Ms. Trostle immediately after her complaint, and Knapp-David subsequently approved of Defendant Botsford's audit of only the Plaintiff's phone records, and the request for her demotion, Plaintiff can circumstantially prove that Knapp-David was aware of Plaintiff's informal complaint. See Exhibit 12 – T. Knapp-David Dep., p. 181. Regardless, because there is a dispute

between the parties on a material issue of fact, the Defendants' Motion for Summary Judgment should be denied.

(3)   _Being Demoted and Suffering a Substantial Pay Cut Constitutes an Adverse Employment Action._

A plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation. *Id*. There is no credible dispute over this element as Plaintiff was demoted, suffered a significant loss of benefits and pay, and was required to go back to working in a correctional facility. See Exhibit 17 – Memo from Botsford.

(4) _Defendants Retaliated Against Plaintiff Less than a Month After Her Informal Complaint._

To prove a retaliation claim indirectly, a plaintiff must demonstrate that the adverse employment action closely followed the protected activity. *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d Cir. 2001). There is no bright line beyond which an adverse employment action cannot qualify as retaliatory. *See Gorman-Bakos v. Cornell Co-op Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir. 2001). However, the Second Circuit has held that causation was established where the adverse employment activity occurred fourth months after the protected activity. *Hubbard*, 347 F. App'x at 681. This element requires a fact intensive analysis and, as such, is one that is usually more appropriate for a jury to decide. *Cifra*, 252 F.3d at 217.

Plaintiff's first informal complaint of discrimination occurred in February 2011. See Exhibit 16 – M. Trostle Dep., p. 122-123.  Immediately thereafter, the Defendants began writing

Ms. Trostle up, presumably to position themselves to terminate her. See Exhibit 19 – Retaliatory Reports. Defendants improperly retained these write-ups in Ms. Trostle's personnel file, and continues to rely upon them, even though Human Resources informed Defendant Botsford that he could not write her up for failing to call into work when she was on FMLA leave. See Exhibit 20 – Email from Jean Daniels, dated February 23, 2011. Additionally, after Plaintiff's complaint, Defendants instructed several employees to monitor Ms. Trostle's movements in the office.  See Exhibit 16 – M. Trostle Dep., p. 191.Plaintiff made her second informal complaint in April 2011, and also threatened to file a charge of discrimination against Defendant Knapp-David. See Exhibit 16 – M. Trostle Dep., p. 194-195.  Approximately one month later, Defendant Botsford, with Defendant Knapp-David's express approval, submitted his request for Ms. Trostle's demotion. See Exhibit 17 – Memo from Botsford. It is clear during this month, Defendant Botsford ordered and then audited more than a year of Plaintiff's phone and attendance records. *Id*. Although Botsford refused to give any approximation on how long it took to audit Ms. Trostle's records, he testified that he performed a Google search on all of the numbers she called. Common sense tells us that this task took quite a while. See Exhibit 9 – D. Botsford Dep., p. 137-139. Also, during the intervening month, Botsford consulted with Knapp-David and Human Resources on several occasions to determine what actions he could legally take against Plaintiff.  See Exhibit 12 – T. Knapp-David Dep., p.  92-93. Given Defendants immediately took steps to demote Plaintiff after she complained about discrimination, and the fact that Defendant's request for Plaintiff's demotion occurred approximately one month later, a jury should have no trouble finding causation because of the proximity in time between Plaintiff's complaint and the adverse employment action.

**B.  Plaintiff has Substantial Direct and Circumstantial Evidence of Pretext.**

Plaintiff obviously denies Defendants reasons to demote her, but for purposes of the *McDonell Douglas* analysis, does not dispute that Defendants have offered a non-discriminatory reason for her discharge, namely that she had was demoted due to attendance issues, excessive use of phones, and a failure to reimburse the state for these calls. See Exhibit 17 – Memo from Botsford. Therefore, the burden shifts back to Plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, was a pretext for discriminatory retaliation. *Hubbard*, 347 F. App'x at 680-81. Plaintiff does not need to prove that the Defendants' reasons for demoting her were not true, but rather, need only show that the retaliation was, more likely than not, motivated the defendants to demote her. *Summ*a, 708 F.3d at 125. Pretext can be established in a number of ways including, through evidence of disparate treatment; temporal proximity and material inconsistencies in defendants' testimony. *Kirkland v. Cablevision Systems,* 760 F.3d 223 (2d Cir. 2014); *Matya v. United Refining Co.*, 323 Fed. Appx. 65 (2d Cir. 2009).

For instance, in a case very similar to this action, the Second Circuit upheld the jury's verdict for a Plaintiff who had been fired for excessive personal internet use. *Hubbard*, 347 F. App'x at 681. In support of her retaliation claim, the Defendant showed evidence of disparate treatment that occurred after she complained of discrimination. *Id.*  Specifically, she showed that other male employees "used the Internet as much, or more, than she did, and that only she and two other women were monitored." *Id.* If it comes down to a question of credibility between the parties, then Summary Judgment should be denied. *Cifra*, 252 F.3d at 217.

While Plaintiff need not prove that Defendants' proffered reasons for terminating her are not true, she has offered substantial evidence on this issue. First, Defendants maintain they terminated Plaintiff for excessive tardiness. See Exhibit 17 – Memo from Botsford. However, they

rely substantially on tardy write-ups improperly created by Defendants Botsford and Knapp-David in February 2011, which occurred while Plaintiff was on FMLA leave, sick leave or vacation, and immediately after her first complaint of discrimination. *Compare* Exhibit 19 – Retaliatory Reports *with* Exhibit 20 – Email from Jean Daniels, dated February 23, 2011. *See also,* Exhibit 25 – Trostle Affidavit. Second, Defendants maintain that Plaintiff abused her state phone by making excessive phone calls and failing to reimburse the state for those calls. See Exhibit 17 – Memo from Botsford. However, Defendants sole evidence on this point is a Google search of her calls. Plaintiff testified that many of those calls were not personal, but work-related. See Exhibit 9 – D. Botsford Dep., p. 137-139. As detailed at length in Plaintiff's Counter-Statement of Material Fact, almost all of the remaining calls occurred during her lunch break, and/or during a family emergency, which is not prohibited by DOCCS. See Exhibit 25 – Affidavit, Melissa Trostle. Defendants maintain that Plaintiff was fired for failing to reimburse the State for her calls. But Defendants have no documentary proof that Plaintiff ever received her phone bill, as they were often distributed irregularly, and Plaintiff spent much of the time in question on FMLA leave. See Exhibit14 – D. Martuscello Dep., p. 97. Now, Defendant Knapp-David maintains that Plaintiff also had issues with her job performance. Exhibit 12 – T. Knapp-David Dep., p. 29. These allegations were not documented in writing, and did not appear on any of Defendant Botsford's termination memorandums. Exhibit 12 – T. Knapp-David Dep., p. 35-37; See Exhibit 17 – Memo from Botsford. Defendant Botsford, Plaintiff's immediate supervisor, also testified that Plaintiff performed the technical aspect of her job well, and that his sole reasons for demoting her were the phone and attendance issues. See Exhibit 9 - D. Botsford Dep. p. 53.

Regardless of the veracity of defendants' allegations, Plaintiff need only prove that retaliation was the motivating factor for her demotion. Plaintiff has done that indirectly through

evidence of disparate treatment, temporal proximity, the harshness of Defendants actions, and through material inconsistencies in the Defendants' statements. First, Defendants admitted that everyone in the office made personal phone calls. See Exhibit 8 – S. Bogardus Dep., p. 33; See Exhibit 9 – D. Botsford Dep., p. 60, 98-99; See Exhibit 12 – T. Knapp-David Dep., p.  66, 154-155. Based upon documents produced in discovery, it is clear that numerous employees, including Defendants, made as much, and more phone calls than Plaintiff. See Exhibit 9 – D. Botsford Dep., p. 60; See Exhibit 31 – Phone Bill (A. Allen made $12.07 worth of personal calls in 6 months; M. Maurowski made $10.77 worth of personal calls in 3 months; T. Keppler made $5.86 worth of personal calls in 7 months; D. Botsford made $5.38 worth of personal calls; T. Knapp-David made at least $6.00 worth of personal calls in 6 months).   Second, although Defendant Knapp-David testified that she always paid for all of her calls, it is clear this was not true, as she also failed to reimburse the state for personal calls over a period of several months. *Compare* Exhibit 31 – Phone Bill *with* Exhibit 32 – Knapp-David Phone Calls. Finally, Defendant Knapp-David spent as much, if not more time, making personal calls from New York State equipment than Melissa Trostle. *See,* Exhibit 32 – Knapp-David Phone Calls and Exhibit 46 – Summary of Knapp-David Personal Calls.   Defendant Knapp-David's personal calls to her husband alone for 9 months amounted to more than half of Plaintiff's unpaid phone bill over a period of 14 months (Not taking into account that many of the Plaintiff's scrutinized phone calls were work-related). Despite the fact that numerous employees made as much, and substantially more calls that Plaintiff, her records were the only ones audited. See Exhibit 9 – D. Botsford Dep., p. 80-81.  Many of these employees also had time and attendance issues as well, and some had been counselled for abuse of state equipment. See Exhibit 9 – D. Botsford Dep., p. 195-197. Not one of these employees were disciplined or demoted. In fact, two of them were later promoted. *Id.*

Next, the temporal proximity of the Defendants' actions is unquestionably compelling. After Plaintiff's first internal complaint of discrimination in February 2011, Defendants began improperly writing Ms. Trostle up for attendance issues and monitoring her movements. When Plaintiff threatened to file a formal charge of discrimination in April 2011, the Defendants immediately audited Plaintiff's phone records and sought her demotion within a few weeks of the complaint.

Finally, Defendants retaliatory intent is evidenced by the harshness of Defendants actions. Pursuant to DOCCS policies and procedures, employers are required to engage in progressive discipline, whereby employees are first informally counselled, formally counselled, penalized, and then demoted or fired. See Exhibit 28 – DOCCS Directive, State Telephones. In this case, the Defendants did not engage in any progressive discipline, or give Ms. Trostle any opportunity to explain her phone calls. See Exhibit 12 – T. Knapp-David Dep., p. 122. Even the Office of Diversity Management concluded that the manner in which Ms. Trostle was demoted was troubling. See Exhibit 22 – ODM Investigation Summary. The Defendants tried to testify that the recommendation to demote Ms. Trostle was not made by them but by Human Resources. See Exhibit 12 – T. Knapp-David Dep., p. 124. This assertion was disputed by every witness from the Human Resources, and the Defendants now seem to claim responsibility for the termination in their Statement of Material Facts, despite their earlier testimony to the contrary.

More importantly almost every DOCCS employee deposed in this case admitted, that if Ms. Trostle's allegations were true, then they would agree that Defendants' conduct could be evidence of pretext. See Exhibit 10 – M. Brooks Dep., p. 44, 55-57; Exhibit 15 - D. Nazon Dep., p. 71; Exhibit 14 - D. Martuscello Dep., p. 109-110; Exhibit 11 - J. Daniels Dep., p. 60. Many of the individuals also agreed that, had they known more of the facts surrounding Ms. Trostle's

13

demotion, they likely would have come to a different conclusion in their investigation of Ms. Trostle's complaints. See Exhibit 7 – D. Ayotte Dep., p. 24-25; Exhibit 14 - D. Martuscello Dep., p. 111. Plaintiff cannot fathom a stronger case of retaliation, short of the Defendants admitting it themselves. At the very least, there are sufficient material facts in dispute which warrants denial of Defendants Motion for Summary Judgment.

### III.   DEFENDANT STATE OF NEW YORK IS PLAINTIFF'S EMPLOYER. IN THE ALTERNATIVE, THE DEFENDANTS HAVE WAIVED THIS DEFENSE BY FAILING TO RAISE IT, CAUSING PLAINTIFF SUBSTANTIAL PREJUDICE.

The Defendants claim, for the first time in this litigation, that the Plaintiff has sued the wrong party.  Namely, they claim that the New York State is not a proper Defendant here.  This claim was not raised in the Defendants' answer, (Exhibit 2), the parties Joint Case Management Plan, (Exhibit 42), or at any time in discovery.  As in initial matter, the State of New York is a proper Defendant in this case.  Ms. Trostle is paid by the State of New York, the State negotiated Ms. Trostle's collective bargaining agreement, and her employment with NYSDOCCS is governed by New York law and regulation.  *See,* Exhibit 25 – Trostle Affidavit.  Furthermore, the State of New York is jointly liable for the Plaintiff's employment with its subordinate state agency, given their economic relationship and the measure of degree of control of DOCCS policymaking.  *See, Alie v. NYNEX Corp.,* 158 F.R.D. 239, 245 (E.D.N.Y. 1994).  In similar circumstances, the United States District Court for the Eastern District of New York held that the City of New York, among other employers, could be held jointly liable under Title VII and the New York State Human Rights Law for the actions of its subordinate agencies, especially where "they control the economic realities of the employment relationship with the employee and the means and manner of the worker's performance." *Gryga v. Ganzman,* 991 F. Supp. 105, 110 (E.D.N.Y. 1998).

14

Should the Court not agree with this analysis, however, the prejudice to the Plaintiff from this affirmative defense being raised now, two years after the Plaintiff filed her complaint, is obvious.  Had the Defendants moved to dismiss, raised the issue at the time they filed an answer, or raised it at any time during the litigation, the Plaintiff would have responded and amended her complaint to plead claims against NYSDOCCS.  The Defendants arguing that claims against the State of New York are improper now, however, in a shallow attempt to avoid liability in the face of the Plaintiff's compelling claims for Title VII retaliation, is not premised on good faith, but on unfair surprise.  This failure clearly violates Rule 8(c)'s requirement of fair notice.  "The Rule is intended to notify a party of the existence of certain issues, and its mandatory language has impelled us to conclude that a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation."  *Doubleday & Co. v. Curtis,* 763 F.2d 495, 503 (2d Cir. 1985).  While Courts have considered affirmative defenses raised for the first time on summary judgment, the touchstone of such a consideration is prejudice to the plaintiff.  *See, Levy v. Kosher Overseers Assn. of America, Inc.*, 2000 WL 294842, * 7 (S.D.N.Y., March 20, 2000).

Should the Court agree with the Defendants' argument, the Plaintiff requests leave of Court to file an Amended Complaint in this action, and revise the caption to reflect that Ms. Trostle is raising claims against NYSDOCCS versus the State to New York.  This will avoid the prejudice that the Defendants' willful failure to address this issue at an earlier time has wrought.  *See, Astor Holdings v. Roski,* 325 F. Supp.2d 251, 260 (S.D.N.Y. 2003) ("the Second Circuit has held that a district court may consider the merits of an affirmative defense – even one explicitly listed as such in Fed. R. Civ. Proc. 8(c) – raised for the first time at the summary judgment stage, so long as the plaintiff has an opportunity to respond").  These amendments, which are obviously meant to address a mistake in pleading (should the Court agree with the Defendants' arguments) that the

agency is aware of given this lawsuit against two DOCCS senior administrators, should relate back to the filing of the Plaintiff's initial complaint. *See, Krupski v. Costa Crociere S.A.,* 130 S.Ct. 2485, 2496-97 (2010). "The question under Rule 15(c)(1)(C)(ii) is what prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant. To the extent the plaintiff's postfiling conduct informs the prospective defendant's understanding of whether the plaintiff initially made a mistake concerning the proper party's identity, a court may consider the conduct." *Id.* (quotations omitted).

Whether the Defendants' affirmative defense has been waived by years of inaction, or whether the Plaintiff can, given the principles of fairness and notice inherent in the Federal Rules, amend their complaint now to address it will be left to the Court's discretion. The Plaintiff respectfully suggests, however, that her Title VII claims should be decided on the merits, not on procedural quibbling that is arguably the product of bad faith and a dilatory motive.

## IV.   DEFENDANTS ARE NOT ENTITLED TO THE *SAME ACTOR INFERENCE PRESUMPTION.*

Defendants argue that they are entitled to the "same actor inference presumption" because Defendants Knapp-David and Botsford are the same individuals who promoted and demoted Plaintiff. However, Defendants fail to discuss the key exception to this rule which is clearly applicable in this case. Specifically, where there is a significant lapse in time between the hiring and firing, the same actor inference presumption should not be applied. *Carlton v. Mystic Transp. Inc.,* 202 F.3d 129, 138 (2d Cir. 2000). This is because over the years, "an individual may develop an animus toward a class of people that did not exist when the hiring decision was made." *Id.* This analysis is particularly relevant in this case, given Knapp-David's animus towards Hispanics

16

seemed to escalate over the years. This is evident given Knapp-David's subsequent refusal to fill the Classification Analyst position with a Spanish speaking employee as the "Spanish item had given her nothing but trouble." See Exhibit 16 – M. Trostle Dep., p. 133. Also, more than two years had elapsed since Defendants promoted Ms. Trostle to the Assistant Director position[7].

Additionally, Plaintiff has not brought any discrimination claims and the same actor inference does not make sense in retaliation claims. This is because employers can impermissibly retaliate against an employee for complaining about discrimination without initially having an invidious intent towards a protected group. *See e.g.*, *Marosan v. Trocaire College*, 2015 WL 1461665, * 12 (W.D.N.Y. Feb. 5, 2015). Further, even at the summary judgment stage of litigation, "the same-actor inference is permissive, not mandatory, and even if the same individuals made both decisions, the Court would not be compelled to give [the defendant] the benefit of the inference." *Memnon v. Clifford Chance US, LLP*, 667 F.Supp.2d 334, 351 (S.D.N.Y. 2009). The Second Circuit also warned that the inference is not to become a substitute for a fact-intensive inquiry into the particular circumstances of the case at hand.") *Grady v. Affliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997). As such, Plaintiff respectfully suggests that the same actor inference presumption is not applicable in this action.

## V.   PLAINTIFF'S COMPLAINTS ON SYSTEMIC DISCRIMINATION AGAINST HISPANICS ARE PROTECTED BY THE FIRST AMENDMENT.

As an initial matter, Defendants argue that Plaintiff cannot maintain a First Amendment retaliation claim against the State of New York. As is clear from her Complaint, Plaintiff did not bring this claim against the State of New York, but against Defendants Botsford and Knapp-David. Defendants have **not** moved to dismiss Plaintiff's First Amendment retaliation claims against

---

[7] *Marosan*, 2015 WL 1461665, *20 (Same actor inference not warranted where four years had elapsed).

Defendant Botsford and Knapp-David. As such, Plaintiff's First Amendment claims should not be dismissed. However, to the extent that the Court wishes to address these claims, the Plaintiff has discussed them accordingly.

Defendants argue that Plaintiff's speech was not protected under the First Amendment. In order to state a retaliation claim, a plaintiff must allege that "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir. 2009). The analysis for the second and third elements of the First Amendment retaliation claim are identical to the Title VII claims. As such, Plaintiff respectfully refers the Court to her prior analysis.

With regards to the first element, speech made by a public employee is protected by the First Amendment if: "the speech fall outside of the employee's "official responsibilities," and touches on a matter of public concern. *Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015) In *Matthews*, a police officer complained about a precinct-wide policy of a mandated quota system forcing police officers to conduct unjustified stops of citizens. *Id.* The Court held that the complaint was protected because it was not made pursuant to the officer's regular job duties. *Id*. Specifically, the officer was generally responsible for addressing radio runs and patrolling the community, not providing feedback on precinct policy. *Id*. The Court distinguished its case from the *Garcetti* decision where the Supreme Court determined that a prosecutor who complained about an officer perjuring himself on the stand fit within his regular job duties, because he was responsible for ensuring that his witnesses provided truthful testimony. *Id*. The Second Circuit also distinguished its case from *Ross v. Breslin*, where the court held that a payroll clerk's speech to her superiors

about pay discrepancies was not protected because it was part of her job responsibilities. *Id.* Ultimately, the Court held that:

> "…[W]hen a public employee whose duties do not involve formulating, implementing, or providing feedback on a policy that implicates a matter of public concern engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public employee."

*Matthews*, 779 F.3d at 174. This decision did not create new law, but merely reaffirmed prior precedent, which, for years, have held that internal complaints about systemic constitutional violations are protected by the First Amendment. *Menes v. City Univ. of New York Hunter Coll.*, 578 F. Supp. 2d 598, 614 (S.D.N.Y. 2008); *Cotarelo v. Vill. of Sleepy Hollow Police Dep't,* 460 F.3d 247, 252 (2d Cir. 2006) (finding that internal complaints did qualify as speech on a matter of public concern because they concerned "discrimination problems generally and were not limited to instances affecting only [plaintiff]"). *See, e.g., Connick v. Myers,* 461 U.S. 138, 146 (1983) (noting that a plaintiff's statements regarding a school district's allegedly racially discriminatory policies involved a matter of public concern); *Griffin v. City of New York*, 880 F. Supp. 2d 384, 397 (E.D.N.Y. 2012) (Internal complaints about systemic constitutional violations by police officers was protected speech.

In this case, Plaintiff testified that she complained to Defendant Botsford about being discriminated against by Defendant Knapp-David. During that conversation she discussed the pattern of discriminatory conduct engaged in by Defendant Knapp-David against Hispanic employees. Specifically, Plaintiff talked with Defendant Botsford about Knapp-David's refusal to hire a Hispanic person for the Spanish Language analyst position and stated that the "Spanish item had given [her] nothing but trouble. *See*, Exhibit 16 – M. Trostle Dep., p. 133-34. Plaintiff also talked about how Defendant Knapp-David filled the position with a Caucasian employee who did

19

not speak Spanish. *Id*. at 193-194. Plaintiff also talked with Defendant Botsford about Knapp-David's demotion of another Hispanic individual, Zaida Chase for conduct that other similarly situated white employees were not demoted for. *Id*. at 192. Plaintiff talked with Defendant Botsford about how Defendant Knapp-David made derogatory comments about another Hispanic employee's appearance. *Id*. at 123.  When this employee decided to leave the office, Defendant Knapp-David prohibited employees from getting her a gift, and having a goodbye party, which they had done for other Caucasian employees. *Id*. Plaintiff also talked with Defendant Botsford about Defendant Knapp-David criticized a Hispanic employee who made comments about politics in the United States, stating that she should go back to Puerto Rico. *Id.*

Like the *Matthews* case, Plaintiff's speech addressed a range of discriminatory conduct engaged in by Defendant Knapp-David that had nothing to do with her. Like the *Matthews* case, Plaintiff's regular job duties did not involve formulating, implementing, or providing feedback on a policy that implicates a matter of public concern. See Exhibit 25 – Affidavit, Melissa Trostle In fact, Plaintiff was not responsible for implementing any policies in the office. *Id.* Therefore, Plaintiff respectfully suggests that there is a material issue of disputed fact, especially in light of the fact that the Defendants did not even move to dismiss her First Amendment claims against Defendants Knapp-David and Botsford.

## VI.    DEFENDANTS RETALIATED AGAINST PLAINTIFF FOR TAKING FMLA LEAVE.

As an alternative to her claims for Title VII and First Amendment retaliation, the Plaintiff maintains that she was also retaliated against for exercising her rights under the Family Medical Leave Act.  FMLA retaliation claims are analyzed under the same *McDonnell Douglas* framework

as Title VII claims. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). In order to make out a claim of retaliation under FMLA, a Plaintiff must show that "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168. Defendants do not dispute that Plaintiff can establish the first three factors, but maintain that "there is no evidence that plaintiff was discriminated against for taking FMLA. Defendants also maintain that Defendants Botsford and Knapp-David were unaware that Plaintiff was on FMLA. Defendants make this argument, despite having produced documentary evidence that Defendants knew Plaintiff was on FMLA leave.

On February 11, 2011, around the same time she made her first informal complaint of discrimination, Plaintiff took FMLA Leave. While she was on FMLA leave, the Defendants retaliated against Plaintiff by improperly writing Plaintiff up for her absences. Specifically, Defendants Botsford and Knapp-David wrote Plaintiff up on 2/15/2011, twice on 2/17/2011, 2/18/2011, and 2/22/2011 for not reporting or calling into work. See Exhibit 25 – Affidavit, Melissa Trostle. However, on those days, Plaintiff was on FMLA leave, which had previously been approved by Human Resources. See Exhibit 20 – Email from Jean Daniels, dated February 23, 2011. In fact, Defendant Botsford was notified by Human Resources that Plaintiff was on FMLA, and, pursuant to DOCCS directives, did not have to call into work every day to confirm that she was not coming in. *Id.* Nevertheless, and in spite of clear direction from Human Resources, the Defendants did not retract these improper write-ups from Plaintiff's personnel file, and later used them to justify Plaintiff's demotion. See Exhibit 17 - Memorandum from Botsford, Dated May 24, 2011.

21

Also, in April 2011, when Plaintiff voiced her intent to file a formal complaint of discrimination against Knapp-David, Plaintiff also informed Defendant Botsford that she was going on FMLA leave. Specifically, Plaintiff informed Defendant Botsford that she needed to have surgery. Plaintiff went on FMLA leave on May 26, 2011 until June 20, 2011. Defendant Botsford and Knapp-David admitted they knew that Plaintiff was out on medical leave but denies knowing that Plaintiff was on FMLA leave. See Exhibit 9 - D. Botsford Dep. p. 56. However, DOCCS policies require employers to automatically consider employees for FMLA leave when they are out sick for more than 3 days. See Exhibit 9 - D. Botsford Dep. p. 72. Therefore, Defendants assertions that they didn't know Plaintiff was on FMLA leave is incredulous.  Soon after informing Defendant Botsford about her need to take FMLA leave, the Defendants began auditing her records, as detailed above. Plaintiff also believes Defendant Knapp-David was discriminating against her because of her use of FMLA leave based upon Knapp-David's comments and actions towards other employees who used FMLA. Defendant Knapp-David instructed Plaintiff and other employees to monitor Diane Smith and Mary Blancha's attendance after they took FMLA leave. See Exhibit 16 – M. Trostle Dep., p. 170; Exhibit 12 – T. Knapp-David Dep., p. 167. Defendant Knapp-David also instructed Plaintiff to consult with Human Resources to determine what actions she could take against individuals who had taken FMLA leave.  See Exhibit 12 – T. Knapp-David Dep., p. 118.

Therefore, given the temporal proximity of Defendants' actions, disparate treatment of Plaintiff and other individuals who took FMLA leave, and the significant inconsistency between their testimony and documentary evidence, Plaintiff suggests that she had established a disputed material issue of fact sufficient to defeat summary judgment.

## VII.   THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy…" *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014). In considering whether to exercise supplemental jurisdiction, when all of Plaintiff's federal claims have been dismissed before trial, the court should consider "values of judicial economy, convenience, fairness, and comity." *Id.* For example, in an employment discrimination case, the Second Circuit held that the district court's exercise of supplemental jurisdiction was not an abuse of discretion. *Id.* The Court reasoned that the federal and state law claims were based on a "common nucleus of operative facts." The court also considered the fact that discovery was complete and there were no novel issues of state law. *Id.*

Like the *Delaney* case, the facts underlying Plaintiff's state and federal claims are based on the same event and the same operative facts. Also, the law governing Plaintiff's state and federal claims are almost identical and do not involve any novel issues of state law. Furthermore, discovery in this case, which has been substantial, is concluded. As such, this Court is best situated to resolve Plaintiff's claims, and doing so would certainly uphold judicial economy, convenience, and fairness. Therefore, in the event that her federal claims are dismissed, the Plaintiff respectfully requests that the Court exercise pendent jurisdiction over her state law claims.

**VIII.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY GIVEN THE DISPUTED ISSUES OF MATERIAL FACT.**

Defendants Botsford and Knapp-David maintain that they are entitled to qualified immunity without engaging in any meaningful analysis. The Qualified Immunity analysis consists of two prongs. First, it must be established that the Defendants violated a clearly established right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). It is beyond dispute that the right to be free from retaliation for engaging in protected activity is clearly established. *Kercado–Clymer v. City of Amsterdam*, 370 Fed. Appx. 238 (2d Cir. 2010); *Galdieri-Ambrosini v. Natl Realty & Dev. Corp.*, 136 276, 291-92 (2d Cir. 1998). Second, if the right is clearly established, the Defendants may be granted qualified immunity if their actions were objectively reasonable. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). However, where there is disputed issues of material fact, summary judgment on the basis of qualified immunity is usually not appropriate as it is a question for the trier of fact. *Jemmott v. Coughlin*, 85 F.3d 61, 66 (2d Cir. 1996) (rejecting Defendants qualified immunity arguments, because Plaintiff's allegations, if proven, represented clear violations of Title VII.); *Kercado-Clymer*, 2010 WL 2292105 (denying qualified immunity on the basis of disputed facts.)

Here, there is no question that Plaintiff had a clearly established right to be free from retaliation in the workplace. Also, there are clear dispute issues of material fact, and as such, summary judgment on the basis of qualified immunity is inappropriate. In fact, NYSDOCCS employees acknowledged that if the Plaintiff's allegations were true, then Defendants' conduct could be a pretext for impermissible retaliation. Plaintiff respectfully requests that the Court deny Defendants Botsford and Knapp-David qualified immunity and allow a jury to decide the clearly contested facts of her case.

**IX.    JEFFREY BRAUDE'S AFFIDAVIT SHOULD BE STRICKEN BECAUSE HE WAS NEVER IDENTIFIED BY DEFENDANTS DURING DISCOVERY.**

The Federal Rule of Civil Procedure 37(c)(1) provides that any party that "fails to provide information or identify a witness as required by Rule 26(a) ... is not allowed to use that information or witness to supply evidence on a motion ... unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 174-75 (S.D.N.Y. 2013). The rule's purpose is to "prevent the practice of 'sandbagging' an opposing party with new evidence." *Id*. Defendants have attached, as Exhibit 1, an affidavit prepared by Jeffrey Braude. While Plaintiff believes that the factual allegations contained in Mr. Braud's affidavit is largely irrelevant, it should be stricken from the record because Defendants failed to identify him at any point during the discovery in this action. See Exhibit 3 – Defendants' Initial Disclosures. Plaintiff did not have a chance to depose him, and will be irrevocably prejudiced in the event that the Court determines that his affidavit is relevant.


<u>CONCLUSION</u>

For the aforementioned reasons, Plaintiff respectfully requests that Defendants' Motion for Summary Judgment be denied in its entirety.


Respectfully Submitted By:

/s Elmer Robert Keach, III

Dated: May 11, 2015

_____
Elmer Robert Keach, III, Esquire
Maria K. Dyson, Esquire
LAW OFFICES OF ELMER ROBERT
      KEACH, III, PC
One Pine West Plaza, Suite 109

Albany, NY 12205
Telephone:  518.434.1718
Telecopier:  518.770.1558
Electronic Mail:
bobkeach@keachlawfirm.com