UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MELISSA TROSTLE,

                              Plaintiff,              1:13-CV-0709
                                                      (GTS/DJS)
v.

STATE OF NEW YORK; DOUG BOTSFORD;
and THERESA KNAPP-DAVID,

                              Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

LAW OFFICES OF ELMER R. KEACH, III, P.C.     ELMER R. KEACH, III, ESQ.
  Counsel for Plaintiff                      MARIA K. DYSON, ESQ.
One Pine West Plaza, Suite 109
Albany, New York 12205

ERIC T. SCHNEIDERMAN                         KEVIN M. HAYDEN, ESQ.
Attorney General of State of New York        Assistant Attorney General
  Counsel for Defendants the State of New York,
  Theresa Knapp-David, and Doug Botsford
615 Erie Blvd. West, Suite 102
Syracuse, New York 13204-2465

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this employment discrimination action filed by Melissa

Trostle ("Plaintiff") against the State of New York, Doug Botsford, and Theresa Knapp-David

("Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56

(Dkt. No. 31.)  For the reasons set forth below, Defendants' motion is granted.

# I.    RELEVANT BACKGROUND

## A.    Plaintiff's Complaint

Plaintiff's Complaint asserts the following four claims: (1) a claim that Defendants Knapp-David and Botsford, as Plaintiff's supervisors, and the State of New York, as Plaintiff's employer, retaliated against her, in violation of the Family Medical Leave Act ("FMLA"), for exercising her rights under the FMLA; (2) a claim that the State of New York retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, for making internal complaints of ethnic discrimination perpetrated by Defendant Knapp-David; (3) a claim that Defendants Knapp-David and Botsford retaliated against Plaintiff, in violation of her First Amendment rights, for complaining about ethnic discrimination by Defendant Knapp-David; and (4) a claim against all Defendants for ethnic discrimination and retaliation in violation of N.Y. Exec. Law § 297.  (Dkt. No. 1, ¶¶ 25-46 [Pl.'s Compl.].)

## B.    Statement of Undisputed Material Facts

The undisputed material facts are as follows.  Plaintiff is a U.S. citizen of Hispanic descent.  (Dkt. No. 31, Attach. 3, ¶ 1 [Defs.' Rule 7.1 Statement].)  On March 26, 1998, she obtained a permanent appointment as a Correction Counselor at Greene Correctional Facility from the New York State Department of Corrections and Community Supervision ("DOCCS").  (*Id.*, ¶ 2.)  On March 22, 2004, DOCCS gave her a provisional appointment as a Corrections Classification Analyst ("CCA").  (*Id.*, ¶ 3.)  Defendants Botsford and Knapp-David were involved in the decision to promote Plaintiff to the provisional appointment as a CCA.  (*Id.*, ¶ 4.)

Plaintiff was later granted a leave of absence from her permanent appointment as a Correction Counselor while serving as a CCA. (*Id.*, ¶ 5.) She maintained a guaranteed right of return to her position as a Correction Counselor. (*Id.*, ¶ 6.) On December 12, 2007, she received another provisional appointment as Assistant Director of Inmate Classification and Movement ("ADICM") at DOCCS' Central Office located in Albany, New York. (*Id.*, ¶ 7.) She simultaneously resigned her provisional appointment as a CCA but continued on leave from her position as a Correction Counselor. (*Id.*) The decision to promote her to ADICM was made by Defendant Knapp-David. (*Id.*, ¶ 8.)

Thereafter, issues arose regarding Plaintiff making excessive phone calls while at work and chronic tardiness. (*Id.*, ¶ 11.) Specifically, between March 2010 and April 2011, she made 31 long distance phone calls that totaled more than 230 minutes. (*Compare* Dkt. No. 31, Attach. 3, ¶ 12 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence that establishes fact] *with* Dkt. No. 42, ¶ 12 [Pl.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated fact].) She did not reimburse the State for these phone calls. (Dkt. No. 31, Attach. 3, ¶ 12 [Defs.' Rule 7.1 Statement].) In addition, she made 25 personal toll free calls during work hours that totaled more than 500 minutes. (*Id.*) On May 24, 2011, Defendant Botsford communicated with Human Resources about these issues and recommended that Plaintiff be removed from her provisional appointment as ADICM and returned to her permanent appointment as a Correction Counselor at Green Correctional Facility. (*Id.*, ¶ 9.) Defendant Botsford's recommendation was approved by Human Resources. (*Id.*, ¶ 10.) On June 20, 2011, Plaintiff was informed of this decision and that she was being returned to her permanent appointment as a Correction Counselor at Greene Correctional Facility. (*Id.*, ¶ 11.)

Plaintiff filed a formal written complaint, dated June 23, 2011, with the Office of Diversity Management ("ODM"). (*Id.*, ¶ 14.) An investigation by ODM found her complaint to be unsubstantiated. (*Id.*, ¶ 15.) The investigation could not determine that a violation of Title VII had occurred, that her demotion had been based on a protected class category or that Defendants had retaliated against Plaintiff. (*Id.*) On April 16, 2012, she filed a complaint with the New York State Division of Human Rights ("DHR"). (*Id.*, ¶ 16.) On March 5, 2013, she requested that her DHR complaint be dismissed on the basis of administrative convenience so she could pursue her remedies in federal court. (*Id.*, ¶ 17.) On April 10, 2013, the Equal Employment Opportunity Commission ("EEOC") closed its file based on Plaintiff's "wishes to pursue the matter in Federal District Court." (*Id.*, ¶ 18.) On June 19, 2013, she commenced this action. (*Id.*, ¶ 19.)

### C. Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1. Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert ten arguments with regard to Plaintiff's claims against them. (Dkt. No. 31, Attach. 8 [Defs.' Mem. of Law].)

First, Defendants argue that Plaintiff's Title VII claims are time-barred by the 300-day limitations period governing those claims because the events giving rise to them (including her receipt of notice of her demotion) occurred on or before June 20, 2011, more than 300 days before she filed her complaint with the DHR on April 18, 2012. (*Id.* at 5-6.)

Second, Defendants argue that all of Plaintiff's claims against Defendants Botsford and Knapp-David in their official capacities are barred by the Eleventh Amendment, and that her individual liability Title VII claims against Defendants Botsford and Knapp-David are barred by Title VII itself. (*Id.* at 6.)

Third, Defendants argue that Plaintiff has no cognizable Title VII claim against the State of New York because it was not Plaintiff's employer; rather, DOCCS was her employer. (*Id.* at 7.)

Fourth, Defendants argue that the "same actor inference" applies to Defendants Botsford and Knapp-David because of their personal involvement in hiring and promoting Plaintiff to both of her provisional positions. (*Id.* at 8.)

Fifth, Defendants argue that Plaintiff cannot meet her initial burden under *McDonnell Douglas* to establish a prima facie employment discrimination case for the following three reasons: (a) she was a provisional employee in her position as ADICM and has failed to provide proof that she was legally qualified for the position under N.Y. Civ. Serv. Law §§ 50, 52, 56, 61; (b) she would no longer be qualified to remain in the position upon the appointment of a certified candidate; and (c) her termination was not arbitrary or capricious because she was unqualified for the ADICM position due to her inability to perform her job functions independently at the required skill level, had issues with tardiness, and made excessive personal phone calls while at work. (*Id.* at 11-12.)

Sixth, Defendants argue that Plaintiff has failed to state a claim for retaliation under Title VII for the following three reasons: (a) Defendant Botsford does not recall her making a complaint to him about the alleged discriminatory treatment by Defendant Knapp-David and, he first learned of her complaint after she was demoted; (b) Plaintiff cannot establish a temporal connection between her complaints to Defendant Botsford and her demotion because, according to Defendant Botsford, she never made any complaints of discrimination before being demoted and, even if she did, she alleges she complained to Defendant Botsford in February 2011, which

was five months before she was demoted; and (c) she cannot overcome the sworn testimony in this case demonstrating that she was demoted for legitimate, non-discriminatory reasons by speculating that her alleged complaints were a motivating reason for her demotion. (*Id.* 12-17.)

Seventh, Defendants argue that there is no evidence Plaintiff was discriminated against for taking FMLA leave because (a) she never complained that her leave was held against her, (b) her leave was not mentioned as a reason for her demotion, and (c) Defendants Botsford and Knapp-David were unaware that Plaintiff was on FMLA leave. (*Id.* at 16-17.)

Eighth, Defendants argue that Plaintiff's First Amendment retaliation claim must be dismissed because (a) her complaints are personal in nature and not a matter of public concern, (b) her speech was not a motivating factor in the decision to demote her, and (c) she fails to plead a claim under § 1983 in that she fails to allege that she engaged in speech that was protected and that she suffered an adverse employment action as a result of that speech. (*Id.* 19-20.)

Ninth, Defendants argue that Plaintiff's NYSHRL claims should be dismissed because (a) they are barred by the Eleventh Amendment, (b) individual liability under the NYSHRL is "sharply circumscribed", and (c) they should be dismissed as pendent state law claims. (*Id.* at 21-24.)

Tenth, and finally, Defendants argue that Plaintiff's claims against Defendants Botsford and Knapp-David must be dismissed because there is no evidence that they acted in a discriminatory manner or that they were the final decision-makers with respect to Plaintiff's demotion. (*Id.* at 24.)

## 2. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff asserts eleven arguments in opposition to Defendants' motion.  (Dkt. No. 43 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that her Title VII claims are timely.  In support of this argument, Plaintiff admits that 301 days elapsed between the date on which she filed her complaint with DHR (on April 16, 2012) and the date on which she received notice of her demotion (on June 20, 2011).  (Dkt. No. 43, at 4 [Pl.'s Opp'n Mem. of Law].)  However, she argues that, because the 300th day (April 15, 2012) was a Sunday, the limitations period was tolled until the next business day (April 16, 2012), which was when she filed her complaint.  (*Id.*)

Second, Plaintiff argues that she has established a prima facie case of retaliation under Title VII and the NYSHRL for the following reasons: (a) she engaged in protected activity by making two informal complaints to Defendant Botsford about Defendant Knapp-David's discriminatory treatment; (b) Defendants were aware of her complaints because Defendant Botsford discussed them with the Human Resources Office, and Defendants Knapp-David and Botsford discussed demoting her immediately after she complained to Defendant Botsford; (c) Plaintiff suffered an adverse employment action by being demoted and incurring a significant loss of benefits and pay; and (d) this adverse action occurred approximately one month after she complained of discriminatory treatment to Defendant Botsford.  (*Id.* at 5-9.)

Third, Plaintiff argues that Defendants' proffered reasons for her discharge were a pretext for discrimination because, in support of their claim that Plaintiff was excessively absent, Defendants relied on tardy write-ups that were improperly created while she was on FMLA leave, sick leave or vacation, and were created immediately after her first complaint of discrimination.  (*Id.* at 10-11.)

With respect to Defendants' allegation that Plaintiff made excessive personal phone calls, she argues that (a) many of those phone calls were work-related and not personal, and (b) almost all of the remaining phone calls occurred during her lunch break and/or during a family emergency, which is not prohibited by DOCCS' policy. (*Id.*)

With respect to Defendants' allegation that Plaintiff never reimbursed the State for her phone calls, she argues that (a) Defendants have failed to provide documentary proof she ever received a phone bill and (b) in any event, she spent most of the time in question on FMLA leave. (*Id.*) Furthermore, Plaintiff argues that (a) numerous employees, including Defendants, made as many, if not more, personal phone calls than she did, (b) Defendant Knapp-David failed to reimburse the State for personal calls she made over a period of several months, and (c) Plaintiff's phone records were the only ones that were audited and many employees who were guilty of the same infractions were never disciplined, in fact two of them were later promoted. (*Id.* at 12.)

With respect to Defendant Knapp-David's allegations that Plaintiff had issues with her job performance, Plaintiff argues that this is misleading for the following two reasons: (a) Defendant Knapp-David's allegations were never documented in writing and did not appear in any of Defendant Botsford's termination memoranda; and (b) Defendant Botsford testified that she performed the technical aspects of her job well. (*Id.* at 11.)

With respect to the temporal proximity of Defendants' actions with her discharge, Plaintiff makes the following two arguments: (a) after Plaintiff made her first internal complaint of discrimination in February 2011, Defendants began improperly writing her up for attendance issues and monitoring her movements; and (b) when she threatened to file a formal charge of discrimination in April 2011, Defendants immediately audited her phone records and sought her demotion within a few weeks of the complaint. (*Id.* at 13.)

Fourth, Plaintiff argues that Defendants' retaliatory intent is evidenced by the harshness of their actions because, pursuant to DOCCS' policies and procedures, employers are required to engage in progressive discipline, and Defendants did not follow this procedure or even give her an opportunity to explain any concerns regarding her phone records. (*Id.*)

Fifth, Plaintiff argues that the State of New York is her employer and a proper Defendant in this case because it paid her salary and negotiated her collective bargaining agreement, and her employment with DOCCS was governed by New York laws and regulations. (*Id.* at 14.) Alternatively, Plaintiff argues that Defendants violated the requirement of fair notice under Fed. R. Civ. P. 8(c) because they failed to raise this argument previously and she has been prejudiced as a result. (*Id.* at 15.) Plaintiff therefore requests leave of Court to file an Amended Complaint and revise the caption to reflect that her claims are being asserted against NYSDOCCS. (*Id.* at 15-16.)

Sixth, Plaintiff argues that Defendants are not entitled to the same-actor inference for the following three reasons: (a) the same-actor inference does not apply where there is a significant lapse in time between when an employee was hired and fired; (b) here, more than two years had elapsed since Defendants promoted her to the ADICM position; and (c) Defendant Knapp-David's animus towards Hispanics escalated over the years, which is evidenced by her refusal to fill the Classification Analyst position with a Spanish-speaking employee because the "Spanish item had given her nothing but trouble." (*Id.* at 16-17.)

Seventh, Plaintiff argues that her First Amendment retaliation claim should not be dismissed because she engaged in protected speech that was a matter of public concern when she complained to Defendant Botsford about Defendant Knapp-David's pattern of discriminatory

conduct against other Hispanic employees.  (*Id.* at 17-20.)  More specifically, Plaintiff argues that, because her complaints related to systemic discrimination within DOCCS and not simply to instances affecting only herself, her speech should be considered as having been made on a matter of public concern.  (*Id.*)

Eighth, Plaintiff argues that Defendants retaliated against her for taking FMLA leave for the following three reasons: (a) Defendants were aware that Plaintiff was on FMLA leave when they improperly wrote her up for being absent from work on several occasions in February 2011; (b) despite being informed that she was on FMLA leave by the Human Resources office, Defendants did not retract the improper write-ups for her absences and later used them to justify her demotion; and (c) Defendant Knapp-David discriminated against other employees who had taken FMLA leave by instructing Plaintiff to monitor their attendance and to consult with Human Resources to determine what actions could be taken against them, causing Plaintiff to believe that Defendant Knapp-David acted similarly when she went on FMLA leave.  (*Id.* at 20-22.)

Ninth, Plaintiff argues that, should the Court dismiss her federal claims, the Court should nonetheless exercise supplemental jurisdiction over her state law claims because this Court is best situated to resolve them after considering factors such as judicial economy, convenience, fairness, and that discovery is complete.  (*Id.* at 23.)

Tenth, Plaintiff argues that Defendants Botsford and Knapp-David are not entitled to qualified immunity for the following two reasons: (a) Defendants have failed to offer any reasons in support of their argument that Defendants Botsford and Knapp-David are entitled to qualified immunity, and (b) disputed issues of material fact preclude a finding of qualified immunity as a matter of law. (*Id.* at 24.)

Eleventh, and finally, Plaintiff argues that the affidavit of Jeffrey Braude should be stricken from the record for the following three reasons: (a) Defendants failed to identify him as a witness during discovery, (b) Plaintiff did not have an opportunity to depose him, and (c) Plaintiff will be irrevocably prejudiced should the Court consider the affidavit. (*Id.* at 25.)

### 3. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants assert two arguments. (Dkt. No. 45 [Defs.' Reply Mem. of Law].)

First, Defendants argue that Plaintiff has not provided sufficient evidence to create a genuine dispute of material fact with respect to whether she was discriminated against on the basis of her ethnicity or her request to take FMLA leave for the following two reasons: (a) Plaintiff's arguments that their actions were motivated by race is based upon speculation and conjecture; and (b) Plaintiff relies on documents and witness testimony when they support her speculation and conjecture but disregards the same documents or witness testimony as unreliable when they do not support her other arguments. (*Id.* at 2.)

Second, Defendants argue that they are entitled to qualified immunity because it was objectively reasonable for them to believe that their actions did not violate Plaintiff's rights. (*Id.* at 2-3.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[2]  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants

---

[1]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[2]      *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

-12-

judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[3]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[4] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.

---

[3]       Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[4]       *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009

WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III. ANALYSIS

### A. Whether Plaintiff's Title VII Claims Are Time-Barred by the 300-Day Limitations Period

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 43, at 4 [Pl.'s Opp'n

Mem. of Law].) In addition to those reasons, the Court notes that it can, and does, take judicial

notice of the fact that the 300th day of the limitations period, April 15, 2012, was a Sunday. Fed.

R. Evid. 201(b)(2).

### B. Whether Plaintiff's Title VII Claims Should Be Dismissed Because Defendants Botsford and Knapp-David Cannot Be Held Individually Liable and the State of New York Is Not Plaintiff's Employer

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendants' memorandum of law. (Dkt. No. 31, Attach. 8, at 7 [Defs.'

Mem. of Law].) To those reasons, the Court adds the following two points.

First, with respect to the individual liability of Defendants Botsford and Knapp-David

under Title VII, Plaintiff correctly notes in her opposition memorandum of law that her

Complaint does not assert a Title VII claim against either of these Defendants. (Dkt. No. 43, at 3

[Pl.'s Opp'n Mem. of Law]; Dkt. No. 1, ¶¶ 32-36 [Pl.'s Compl.].) This is understandable

because it is well established that Title VII does not provide for individual liability. *See Spiegel

v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (stating that, "[w]e have, however, determined that

the remedial provisions of Title VII . . . do not provide for individual liability.") (citing cases).

-14-

Second, it is apparent that DOCCS, not the State of New York, was Plaintiff's employer. Therefore, Plaintiff's Title VII claim must be dismissed against the State of New York. *See La Martina v. Fischer*, 12-CV-0308, 2013 WL 1682603, at *5 (W.D.N.Y. Mar. 19, 2013) (holding that the State of New York was not a proper defendant where plaintiff was employed by DOCCS and noting that "cases decided within the Second Circuit have held that the State is not a proper defendant in Title VII actions brought by employees of various other state agencies") (collecting cases); *cf. Rock v. Blaine*, 14-CV-1421, 2015 WL 3795886, at *5-6 (N.D.N.Y. June 17, 2015) (D'Agostino, J.) (denying the State's motion to dismiss it from a Title VII action where plaintiff, a DOCCS employee, alleged facts plausibly suggesting that the State was plaintiff's employer).

However, the Court finds that Plaintiff should be given the opportunity to amend her Complaint to assert her claims against DOCCS, because of the prejudice Plaintiff would suffer if her request were denied, and the lack of undue prejudice Defendants would suffer if Plaintiff's request were granted. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *cf. Hernandez v. Strack*, 96-CV-0417, 1997 WL 137439, at *4 (S.D.N.Y. Mar. 25, 1997) ("Ordinarily the court would grant plaintiff leave to amend his complaint to name the correct New York State Department of Corrections . . . official."); *Doe v. Goord*, 04-CV-0570, 2004 WL 2829876, at *1 (S.D.N.Y. Dec. 10, 2004) ("Leave is granted for Doe to amend his complaint within 30 days to name DOCCS . . . ."). Accordingly, Plaintiff shall have fourteen (14) days from the date of this Decision and Order in which to file and serve an Amended Complaint naming DOCCS as a defendant in place of the State of New York.

**C.  Whether Plaintiff's NYSHRL Claims Are Barred by the Eleventh Amendment**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendants' memorandum of law.  (Dkt. No. 31, Attach. 8, at 20-23 [Defs.' Mem. of Law].)  To those reasons, the Court adds the following analysis.

As an initial matter, the Court notes that Plaintiff has failed to respond to Defendants' legal arguments regarding dismissal of her claims based upon the State's immunity from suit under the Eleventh Amendment.  As explained above in Part II of this Decision and Order, in this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  The Court finds that, at the very least, Defendants have met that modest threshold burden with respect to the dismissal of Plaintiff's NYSHRL claim against the State of New York.  In any event, the Court would grant Defendants' motion for summary judgment dismissing Plaintiff's NYSHRL claim even if it were to subject their motion to the more rigorous scrutiny appropriate for a contested motion, for the reasons set forth in Defendants' memorandum of law and below.

As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress.  *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  Here, immunity from Title VII claims has been abrogated by Congress but immunity from NYSHRL claims has not been waived or abrogated.  *See Tillery v. NYS*

*Office of Alcohol & Substance Abuse Servs.*, 13-CV-1528, 2014 WL 2434954, at *5 (N.D.N.Y.

May 30, 2014) (Kahn, J.) (stating that "Defendant correctly points out that 42 U.S.C. § 2000d-

7[a][1], which abrogates sovereign immunity for violations of *federal* antidiscrimination statutes,

applies only to federal causes of action rather than suits arising under state law"); *Quadir v. New*

*York State Dep't of Labor*, 39 F. Supp. 3d 528, 537-38 (S.D.N.Y. 2014) (stating that "New York

has not waived its Eleventh Amendment immunity for NYSHRL suits in federal courts")

(collecting cases).[5] "Accordingly, Plaintiff's Title VII claims against DOCCS may proceed. The

same cannot be said, however, of Plaintiff's . . . NYSHRL claims against DOCCS. There is no

evidence that, in enacting NYSHRL, New York consented to suit in federal court." *Nunez v.*

*New York State Dep't of Corr. & Cmty. Supervision*, 14-CV-6647, 2015 WL 4605684, at *7

(S.D.N.Y. July 31, 2015).

Notwithstanding the above-described general rule, the Eleventh Amendment does not bar

suit under NYSHRL § 296 against a state employee in his or her individual capacity. *Lore v.*

*City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). "[Section 296 of the] NYSHRL allows for

---

[5]     The Court notes that it rendered a finding in *Collins v. DOCCS*, 07-CV-0493, 2012 WL 2563029, at *2 (N.D.N.Y. June 29, 2012) (Suddaby, J.) inconsistent with the finding rendered in the present case. In *Collins*, DOCCS argued that plaintiff's NYSHRL claim was barred due to sovereign immunity under the Eleventh Amendment. *Collins*, 2012 2563029, at *1. However, this Court interpreted NYSHRL § 297(9) to mean that, "where a complaint to the [DHR] is dismissed for administrative convenience, there is no jurisdictional bar to an action in federal court based on the same aggrieved unlawful discriminatory practice." *Id.* at *2 (citing *Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 883-84 [2d Cir. 1995]). Other courts that have considered *Collins* have disagreed with this interpretation, holding instead that, "[r]ather than effecting a waiver or sovereign immunity, . . . [NYSHRL § 297(9)] simply places an individual who has received a dismissal of his NYSDHR complaint for the reasons set forth in the statute[, including administrative convenience,] in the same procedural posture that individual would have been in had that individual not initially chosen to proceed before the [DHR]." *Korzeniewski v. New York*, 12-CV-0727, 2013 WL 6148076, at *3 (W.D.N.Y. Nov. 22, 2013); *accord, Alessi v. DOCCS*, 16 F. Supp. 3d 221, 225 (W.D.N.Y. 2014). After careful reflection, the Court agrees with the latter interpretation of NYSHRL § 297(9) and holds that a plaintiff's DHR complaint that is dismissed for administrative convenience does not waive sovereign immunity.

individual liability under two theories: (1) if the defendant has 'an ownership interest' in the employer or has 'the authority to hire and fire employees,' and (2) if the defendant aided and abetted the unlawful discriminatory acts of others." *E.E.O.C. v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497, 523 (E.D.N.Y. 2014) (citing NYSHRL §§ 296[1], 296[6]) (internal citations omitted). However, Plaintiff has not asserted any claims under NYSHRL § 296 in her Complaint. Accordingly, the Court assumes that Plaintiff's claim against Defendants Botsford and Knapp-David under NYSHRL § 297 is being asserted against these Defendants in their official capacities. (Dkt. No. 1, ¶¶ 43-46 [Pl.'s Compl.].) That claim is therefore barred by the Eleventh Amendment because "sovereign immunity extends to 'arms of the state,' such as . . . its officials sued in their official capacities for money damages." *Morgan v. NYS Atty. Gen.'s Office*, 11-CV-9389, 2013 WL 491525, *11 (S.D.N.Y. Feb. 8, 2013); *accord*, *Fanelli v. New York*, 51 F. Supp. 3d 219, 233 (E.D.N.Y. 2014) (citing cases).

> ### D. Whether Plaintiff's Title VII Retaliation Claim Against DOCCS Would Be Futile

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 43, at 5-14 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

"The burden-shifting framework laid out in *McDonnell Douglas* . . . governs retaliation claims under both Title VII and the NYSHRL." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). "To make out a prima facie case of retaliation, a plaintiff must make four showings: that '(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Summa*, 708 F.3d at 125

-18-

(quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 [2d Cir. 2006]). "The burden

of proof that must be met to permit a Title VII plaintiff to survive a summary judgment motion at

the *prima facie* stage has been characterized as 'minimal' and '*de minimis*.'" *Jute v. Hamilton*

*Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

"Once a prima facie case of retaliation is established, the burden of production shifts to

the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action."

*Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). "If the employer demonstrates a

legitimate, non-discriminatory reason, then '[t]he burden shifts . . . back to the plaintiff to

establish through either direct or circumstantial evidence, that the employer's action was, in fact,

motivated by discriminatory retaliation." *Summa*, 708 F.3d at 125 (quoting *Raniola*, 243 F.3d at

625). "While there is no claim for individual liability under Title VII, defendants may be held

individually liable under the NYSHRL." *Delisi v. Nat'l Ass'n of Prof'l Women, Inc.*, 48 F. Supp.

3d 492, 495 (E.D.N.Y. 2014) (internal quotations omitted).

### 1.    Prima Facie Case of Retaliation

With respect to the first two elements that must be established to make a prima facie case

of retaliation, Plaintiff testified at her deposition that she verbally complained to Defendant

Botsford in February 2011 and April 2011 about Defendant Knapp-David's racial discriminatory

treatment. (Dkt. No. 41, Attach. 16, at 122:1-17, 193:18-195:5 [Trostle Dep.].) Plaintiff

reiterated this allegation in her verified complaint filed with the DHR. (Dkt. No. 41, Attach. 24,

¶ 4 [DHR Compl.].) However, Defendant Botsford does not recall being aware that Plaintiff

complained about Defendant Knapp-David being prejudiced against employees of Spanish

descent, only that Plaintiff did not think Defendant Knapp-David was fair towards her. (Dkt. No.

41, Attach. 9, at 123:13-22 [Botsford Dep.].) Furthermore, Defendant Botsford testified at his deposition that Plaintiff never advised him that she was going to file a formal complaint of racial discrimination against Defendant Knapp-David. (*Id.* at 124:5-15.) Notwithstanding this testimony, Carol Makowski, a DOCCS' Human Resources representative, testified at her deposition that Defendant Botsford informed her that Plaintiff had complained that she felt she was being discriminated against because she is Hispanic. (Dkt. No. 41, Attach. 13, at 20:5-18 [Makowski Dep.].) Therefore, under the circumstances, a genuine dispute of material fact exists regarding whether Defendant Botsford was aware of Plaintiff's protected activity (i.e., her complaint of discriminatory treatment) before she was demoted.

With respect to the awareness of Defendant Knapp-David, Plaintiff testified at her deposition that she complained to Defendant Knapp-David in her office in February 2011 about disparate treatment. (Dkt. No. 41, Attach. 16, at 121:5-122:10 [Trostle Dep.].) However, it is unclear whether this complaint was related to disparate treatment based upon race or Defendant Knapp-David simply favoring certain employees over others. (*Id.*) Plaintiff elaborates on the February 2011 meeting with Defendant Knapp-David in her complaint to the ODM, in which she suggests that Plaintiff was upset that she was not treated as respectfully or professionally as other employees. (Dkt. No. 41, Attach. 21, at 1-2 [ODM Compl.].) Plaintiff does not mention, however, that she expressed her concerns to Defendant Knapp-David that she was being treated in this manner based on her race. (*Id.*) Indeed, Defendant Knapp-David testified at her deposition that Plaintiff did not discuss her concerns with her regarding racially discriminatory treatment. (Dkt. No. 41, Attach. 12, at 144:11-15 [Knapp-David Dep.].)

Notwithstanding the lack of direct evidence that Defendant Knapp-David had knowledge of Plaintiff's discriminatory complaints before being demoted, the Second Circuit has held that "general corporate knowledge that the plaintiff has engaged in protected activity is sufficient" to establish the knowledge element of a prima facie retaliation claim. *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006). As discussed above, there is admissible record evidence that Defendant Botsford knew about Plaintiff's complaints regarding discriminatory treatment based on race. In addition, given that Defendant Knapp-David was Defendant Botsford's supervisor, that Defendants Botsford and Knapp-David conferred with one another regarding whether Plaintiff should be demoted (Dkt. No. 41, Attach. 9, at 176:15-178:15 [Botsford Dep.]), and that these discussions took place not long after Plaintiff allegedly complained of discriminatory treatment, the Court finds there is sufficient circumstantial evidence from which a rational fact finder could conclude that Defendant Botsford would have discussed Plaintiff's complaints with Defendant Knapp-David. *See Ghirardelli v. McAvey Sales & Serv., Inc.*, 287 F. Supp. 2d 379, 388 (S.D.N.Y. 2003) (holding that jury could conclude that decisionmaker knew of plaintiff's protected activity because plaintiff had complained to decisionmaker's supervisor and relevant management group was small). Accordingly, drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has met her *de minimis* burden in establishing the first two elements of a prima facie retaliation claim.

With regard to the third element, whether Plaintiff suffered an employment action that can be considered adverse is not really in dispute. *See Patrolmen's Benevolent Ass'n v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002) (holding that an adverse employment actions may include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a

less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (alteration in original and internal quotation marks omitted).

Finally, with regard to the fourth element, a plaintiff may demonstrate a causal connection either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct[,] or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Here, the Court finds that Plaintiff has offered sufficient evidence of both temporal proximity and disparate treatment to meet her initial burden of establishing a causal connection between her informal complaints of racial discrimination and her demotion. (Dkt. No. 43, at 10-13 [Pl.'s Opp'n Mem. of Law].)

### 2.      Legitimate Non-Retaliatory Reason

As discussed above in Part I.C.1. of this Decision and Order, Defendants have adduced admissible evidence that Plaintiff's demotion was due to her tardiness issues and excessive use of the telephone to make personal calls during work hours. (Dkt. No. 31, Attach. 8, at 11-12 [Defs.' Mem. of Law].) Because these are legitimate non-retaliatory reasons for her termination, the burden returns to Plaintiff to demonstrate that these reasons were pretext for retaliation. *See Henny v. New York State*, 842 F. Supp. 2d 530, 554 (S.D.N.Y. 2012) (stating that "Plaintiff's lateness and absences certainly suffice to establish a legitimate, nondiscriminatory reason for her treatment") (citing cases).

### 3.        Pretext and "But-For" Causation

Under the circumstances, Defendants are entitled to summary judgment unless Plaintiff can adduce admissible evidence establishing that Defendants' non-retaliatory reasons were a mere pretext for retaliation and that her "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013); *see also Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 246-47 (E.D.N.Y. 2014) (applying but-for standard to the plaintiff's retaliation claims under Title VII and NYSHRL).  "Thus a plaintiff alleging retaliation in violation of Title VII must show that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Rumsey v. Ne. Health, Inc.*, 89 F. Supp. 3d 316, 338 (N.D.N.Y. 2015) (Sannes, J.) (quoting *Nassar*, 133 S.Ct. at 2533).

The Second Circuit has explained that "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of a retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013); *see also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (stating that "Title VII is violated if a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause, and if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the discharge") (internal citations omitted).  As the Second Circuit noted,

> A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.  From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.

*Kwan*, 737 F.3d at 846. To show pretext and retaliatory motive, a plaintiff "may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at this stage." *Id.*

Here, the Court finds that Plaintiff has met her burden of demonstrating that Defendants' proffered reasons for her demotion were pretextual for the reasons stated in her opposition memorandum of law. (Dkt. No. 43, at 10-14 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

In addition to the temporal proximity between Plaintiff's alleged informal complaints in April 2011 and her demotion, Plaintiff has submitted evidence indicating that she was subjected to disparate treatment. Specifically, Plaintiff has submitted a DOCCS' directive that dictates the actions to be taken in the event inappropriate telephone use by an employee is detected. These actions include (1) monetary reimbursement for calls, (2) informal counseling, (3) formal counseling, and (4) disciplinary action. (Dkt. No. 41, Attach. 28, at 2 [DOCCS' Policy].) When questioned at their depositions about whether any of these actions were taken, both Defendants Botsford and Knapp-David testified unequivocally that Plaintiff was not given an opportunity to explain the basis for the phone calls in question, to reimburse the State for the phone calls, or given any counseling. (Dkt. No. 41, Attach. 9, at 118:13-119:20; 61:8-21; 164:23-165:3; 180:19-181:11 [Botsford Dep.]; Dkt. No. 41, Attach. 12, at 121:17-122:17 [Knapp-David Dep.].)

Furthermore, Defendant Botsford admitted that there were other employees who had accumulated phone bills larger than Plaintiff's phone bill due to making personal phone calls but had been given the opportunity to reimburse the State for those calls and not subjected to any

discipline.  (Dkt. No. 41, Attach. 9, at 64:3-65:9; 98:8-99:3 [Botsford Dep.].)  Defendant

Botsford also admitted that other employees who had been found to be abusing State equipment,

such as computers, had been given informal counseling but never demoted or fired.  (*Id.* at

194:9-196:13.)  Similarly, Defendant Knapp-David testified that another DOCCS' employee,

Joyce Carver, who was employed as a class analyst, had been found to be making excessive

personal calls while at work, but was counseled and later promoted (but never demoted or fired).

(Dkt. No. 41, Attach. 12, at 154:18-155:23; 158:6-8 [Knapp-David Dep.].)  Finally, Defendant

Botsford testified that he personally audited Plaintiff's phone records by going to great lengths

such as looking up each phone number on the Internet to determine whether or not it was

business related.  (*Id.* at 139:18-141:3.)  Defendant Botsford admitted that he had never done that

with any other employee's phone records.  (*Id.* at 141:6-142:3; 145:22-146:6.)

　　　　The Court finds that, these deviations from the disciplinary policy with regard to

Plaintiff's telephone use, the temporal proximity of these events with Plaintiff's demotion, and

the disparate treatment of other employees who committed similar infractions creates a genuine

dispute of material fact.  *See Ferrell v. Leake & Watts Servs., Inc.*, 83 F. App'x 342, 347 (2d Cir.

2003) (finding that "whether these departures [from established procedures] had an impact on

[plaintiff's] dismissal is a question of fact for trial"); *Sklaver v. Casso-Solar Corp.*, 02-CV-9928,

2004 WL 1381264, at *9 (S.D.N.Y. May 15, 2004) (holding that "plaintiff has demonstrated that

defendant elected not to follow its policy of progressive discipline and instead terminated him

summarily, an action that provides some evidence of pretext should the jury of fact reject

defendant's proffered explanation"); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir.

2011) (holding that pretext may be shown "where an employer treats one employee more harshly

than other 'similarly situated' employees for 'nearly identical' conduct").

**E.      Whether the Same Actor Inference Precludes Plaintiff's Title VII, FMLA, and NYSHRL Retaliation Claims**

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Plaintiff's opposition memorandum of law.  (Dkt. No. 43, at 16-17 [Pl.'s Opp'n Mem. of Law].)  In addition to those reasons, the Court adds the following analysis.

The same-actor inference "is generally not a sufficient basis to grant summary judgement for the employer, at least when the employee has proffered evidence of pretext." *Masters v. F. W. Webb Co.*, 03-CV-6280, 2008 WL 4181724, at \*6 (W.D.N.Y. Sept. 8, 2008); *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003) (stating that the same-actor inference "is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact"); *Copeland v. Rosen*, 38 F. Supp. 2d 298, 305 (S.D.N.Y.1999) (rejecting "defendants' contention that the 'same actor' inference mandates, at the summary judgment stage or any other, that no inference of discriminatory intent may be drawn . . . [because] [t]he 'same actor' inference is not a necessary inference, it is only a plausible one, and decisions in this Circuit addressing it have warned that its use is not to become a substitute for a fact-intensive inquiry into the particular circumstances of the case at hand.").  As discussed above in Part III.D. of this Decision and Order, Plaintiff has raised a genuine dispute of material fact regarding whether Defendants retaliated against her after she made complaints about discriminatory treatment.  Accordingly, it would be inappropriate to dismiss Plaintiff's claims on the basis of the same-actor inference.

**F.      Whether Plaintiff's Status as a Provisional Employee Precludes Her Retaliation Claims**

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

There is no dispute that Plaintiff was a provisional employee while employed in the position of ADICM. As a provisional employee, Plaintiff could be terminated "at any time without a hearing or cause shown." *As-Salaam v. New York City Dep't of Parks & Recreation*, 02-CV-5646, 2007 WL 2126262, at *4 (E.D.N.Y. July 24, 2007). "The government's right to terminate or demote a provisional employee is not boundless, however, in that the government's action must not be arbitrary or capricious." *Gordon v. Town of Hunter*, 91-CV-0305, 1996 WL 77391, at *15 (N.D.N.Y. Feb. 16, 1996) (McCurn, S.J.). "In New York, this restriction has been construed to mean that such employees may not be terminated for a constitutionally impermissible purpose or in violation of a statutory proscription or policy established by decisional law." *Gordon*, 1996 WL 77391, at *15. Accordingly, Plaintiff's status as a provisional employee does not allow Defendants to demote her if a motivating reason for doing so was that she complained of discriminatory treatment within the workplace.

### G. Whether Plaintiff's FMLA Retaliation Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 31, Attach. 8, at 17-18 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

In order to establish a prima facie case of retaliation under the FMLA, a plaintiff must adduce evidence that (1) she exercised rights protected under the FMLA, (2) she was qualified for his position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred in circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). The burden shifting framework established in *McDonnell Douglas* is also applicable to FMLA retaliation claims. *Potenza*, 365 F.3d at 167-68.

Here, the first three elements are not in dispute.  With respect to the fourth element, the

Court finds that Plaintiff has met her prima facie burden based upon the temporal proximity

between her taking FMLA leave in May 2011 and Defendants' decision to demote her on the day

that she returned from FMLA leave in June 2011.  *See Gordon v. Health & Hosps. Corp.*, 06-

CV-1517, 2008 WL 924756, at *11 (E.D.N.Y. Mar. 31, 2008) (stating that "the temporal

proximity of plaintiff's engagement in a protected activity . . . with defendants' decision to fire

her can be sufficient in and of itself to establish a causal connection"); *Terry v. Cty. of Cayuga*,

11-CV-1296, 2013 WL 5464395, at *5 (N.D.N.Y. Sept. 30, 2013) (Kahn, J.) (noting that

plaintiff was terminated on the day she returned from FMLA leave, and finding that "[s]uch

close temporal proximity generally gives rise to an inference of retaliation").  Defendants'

legitimate, non-discriminatory reasons for demoting Plaintiff are the same as those discussed

above in Part III.D.2. of this Decision and Order.  Thus, Plaintiff must carry her burden of

demonstrating pretext; however, the Court agrees with Defendants that there is insufficient

evidence to establish pretext as a matter of law for the following three reasons.

First, Defendants Botsford and Knapp-David testified at their depositions that they were

aware of Plaintiff's medical problems but were unaware that she was on actual FMLA leave.

(Dkt. No. 41, Attach. 9, at 55:14-22; 56:16-20; 74:20-75:3; 79:3-7 [Botsford Dep.]; Dkt. No. 41,

Attach. 12, at 106:23-24 [Knapp-David Dep.] [stating that "I was not aware of that she was on

family leave–medical leave.  I have no knowledge of that"].)  "The fact that the relevant decision

maker was unaware that plaintiff had requested FMLA leave undercuts any argument that

retaliatory intent was behind the decision to fire plaintiff." *Shah v. Eclipsys Corp.*, 08-CV-2528,

2010 WL 2710618, at *12 (E.D.N.Y. July 7, 2010) (citing cases); *see also DeAngelo v.*

*Yellowbook Inc.*, 105 F. Supp. 3d 166, 183 (D. Conn. 2015) (stating that "[a] lack of evidence from which a jury could infer that a plaintiff's supervisor knew that he had requested FMLA leave is 'fatal' to his retaliation claim"); *cf. Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 148 (2d Cir. 2010) (noting that "a jury may find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicitly upon the orders of a superior who has the requisite knowledge"). Plaintiff argues that DOCCS' policies require employers to automatically consider employees for FMLA leave when they are sick from work for more than three days. As an initial matter, there is no admissible record evidence indicating that Defendant Botsford was aware of this policy.[6] In any event, the e-mail message from Jean Daniels in Human Resources to Defendant Botsford does not expressly state that Plaintiff was on FMLA leave in February 2011, as Plaintiff contends. (Dkt. No. 41, Attach. 20 [Daniels' e-mail].) Rather, the e-mail message states that Plaintiff was *eligible* for FMLA leave and that she should be informed of that eligibility by DOCCS. (*Id.*) The record contains no follow-up communication from Human Resources to Defendant Botsford stating that Plaintiff was on FMLA leave or should be considered as being on leave.

Second, there is no admissible record evidence supporting Plaintiff's argument that Defendants improperly documented her as being absent from work in February 2011 and then used those absences to justify her demotion. Specifically, although there is admissible record evidence that Defendant Botsford documented Plaintiff as being absent on five days in February

---

[6] Plaintiff cites to page 72 of Defendant Botsford's deposition transcript in support of her argument that Defendant Botsford was aware of this policy. (Dkt. No. 43, at 22 [Pl.'s Opp'n Mem. of Law].) However, neither that citation nor the following pages of the deposition transcript (up until the line of questioning changed) provides support for Plaintiff's argument. (*Id.* at 73-80.)

2011 (Dkt. No. 41, Attach. 19 [Reports of Absence]), Defendant Botsford did not rely on those

absences in his memorandum that recommended Plaintiff's demotion.  (Dkt. No. 41, Attach. 17

[Botsford Mem.].)  Rather, Defendant Botsford referenced *other* specific instances of Plaintiff

being absent and late to work; he did not even mention her absences in February 2011.  (*Id.*)

Third, Plaintiff's argument that Defendant Knapp-David allegedly responded unfavorably

when other employees took FMLA leave is unpersuasive because there is no admissible record

evidence that Defendant Knapp-David ever made comments regarding Plaintiff taking FMLA

leave.  In addition, the testimony cited by Plaintiff from Defendant Knapp-David's deposition in

support of her argument indicates that Defendant Knapp-David was concerned about staff

coverage when an employee took FMLA leave, not that she harbored any animus towards an

employee going out on medical leave.  More specifically, Defendant Knapp-David testified as

follows:

> Q: Okay.  Did you ever send Melissa Trostle down to Personnel for her to inquire about Diane Smith and her being out on family medical leave?
>
> A: I might have.
>
> Q: Did you ever tell her to go down there and find out what could or could not be done in terms of Miss Smith's employment?
>
> A: I don't remember it in respect to her employment, but I may have sent her down to find out what we–what we could and could not do because it was a unit where there were only three people and there had to be coverage.  So we needed to know what our–what the realm was how we could operate.

(Dkt. No. 41, Attach. 12, at 167:5-17 [Knapp-David Dep.].)

"Verbal comments constitute evidence of discriminatory motivation when a plaintiff

demonstrates that a nexus exists between the allegedly discriminatory statements and a

defendant's decision to discharge the plaintiff." *Silver v. N. Shore Univ. Hosp.*, 490 F. Supp. 2d 354, 362 (S.D.N.Y. 2007); *see also Terry*, 2013 WL 5464395, at *6 (stating that "[e]mployer comments or actions evincing animus towards FMLA leave can create an inference of retaliation"). However, "[s]tray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). "In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Silver*, 490 F. Supp. 2d at 363; *accord*, *Wyeth Pharms., Inc.*, 616 F.3d at 149.

Here, the last three factors do not weigh in Plaintiff's favor. With respect to the second factor, no time frame is given as to when Defendant Knapp-David made comments about Ms. Smith's FMLA leave in relation to Plaintiff's demotion. With respect to the third factor, the Court finds that a reasonable factfinder could not view Defendant Knapp-David's remarks as discriminatory towards those who take FMLA leave. As discussed above, Defendant Knapp-David's testimony indicates that she was merely concerned about staff coverage rather than being upset with Ms. Smith for taking FMLA leave. Finally, with respect to the fourth factor, there is no admissible record evidence that Defendant Knapp-David's remarks were in any way related to the decisionmaking process regarding Plaintiff's demotion. In other words, Plaintiff

has failed to demonstrate a sufficient nexus between Defendant Knapp-David's remarks and Plaintiff's demotion. Plaintiff's argument is speculative at best.

For all of the foregoing reasons, the Court finds that Plaintiff has failed to adduce sufficient admissible record evidence to meet her burden demonstrating that Defendants' proffered reasons for her demotion were pretextual.

### H. Whether Plaintiff's First Amendment Retaliation Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendant's memorandum of law. (Dkt. No. 31, Attach. 8, at 18-20 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The First Amendment protects a public employee's speech only when "the employee [speaks] as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The Second Circuit has observed that, when a plaintiff makes complaints to her supervisors that implicate system-wide discrimination, the complaints involve a matter of public concern. *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993). However, "courts must look to the 'primary aim' or 'motive' of the individual in determining whether the speech was made as a citizen upon matters of public concern or as an employee upon matters of personal interest." *Alexander v. Karosi*, 95-CV-2469, 1996 WL 684387, at *4 (D. Conn. Aug. 12, 1996). Furthermore, "[t]he Second Circuit . . . does not permit speech to be characterized as both 'public' and 'private,' but instead requires that speech be 'placed in either the 'public concern' or 'private interest' category and that the determination [should] be based on the 'primary aim' of the speech.'" *Alexander*, 1996 WL 684387, at *4 (quoting *Saulpaugh*, 4 F.3d at 147); *accord*, *Thomas v. City of New York*, 953 F. Supp. 2d 444, 459 (E.D.N.Y. 2013).

Here, Plaintiff argues that she engaged in protected speech by complaining to Defendant Botsford about systemic discrimination against Hispanics in the workplace by Defendant Knapp-David. (Dkt. No. 43, at 19-20 [Pl.'s Opp'n Mem. of Law].) Plaintiff's deposition testimony reveals that she referenced discrimination on a general level when she allegedly complained to Defendant Botsford about Defendant Knapp-David. (*See generally* Dkt. No. 41, Attach. 16, at 122:13-123:25; 192:24-194:24 [Trostle Dep.].) However, it is clear that Plaintiff's primary aim in making these complaints was to improve her treatment as an employee and not to speak out as a citizen about systematic discrimination at DOCCS. (*Id.*) *See also Alexander*, 1996 WL 684387, at *5 (holding that "the content and context of [plaintiff's] complaints reveal that the 'primary aim' of his speech was to improve his treatment as a UCONN employee" rather than speaking out as a citizen about systemic race discrimination); *Thomas*, 953 F. Supp. 2d at 460 (holding that, "[b]ecause there is no evidence that plaintiff complained of systemic discrimination at [her employment], as opposed to seeking to advance her own career, . . . her First Amendment Retaliation claim is dismissed"); *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (holding that "the mere fact that one or two of [plaintiff's] comments could be construed broadly to implicate matters of public concern does not alter the general nature of her statements[,]" which were "personal in nature and generally related to her own situation within the HHC residency program").

Accordingly, Plaintiff's First Amendment retaliation claim is dismissed.

## I.      Whether Defendants Botsford and Knapp-David Are Entitled to Qualified Immunity

Because the Court has found that Defendants' motion should be granted, the Court need not consider whether Defendants' Botsford and Knapp-David are entitled to qualified immunity.

The Court would add only that qualified immunity was not asserted as an affirmative defense in Defendant's Answer. *See Lee v. Sandberg*, 136 F.3d 94, 101 (2d Cir. 1997) (stating that "[q]ualified immunity is an affirmative defense. The burden rests on the defendants to raise the defense in their answer and to establish the defense on a motion for summary judgment or at trial").

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 31) is **<u>GRANTED</u>**; and it is further

**ORDERED** that all of the claims in Plaintiff's Complaint (Dkt. No. 1) are **<u>DISMISSED</u>** except for her Title VII retaliation claim against the State of New York, which shall be dismissed if not corrected as specified below; and it is further

**ORDERED** that Plaintiff has **FOURTEEN (14) DAYS** from the date of this Decision and Order to file an Amended Complaint asserting her Title VII retaliation claim (Count Two in the original Complaint) against DOCCS; and it is further

**ORDERED** that, should Plaintiff fail to file an Amended Complaint by **APRIL 7, 2016**, Plaintiff's Title VII retaliation claim against the State of New York shall be **<u>DISMISSED</u>** without further Order of the Court. and it is further

**ORDERED** that Defense counsel is directed to file a letter on the docket by **APRIL 1, 2016** advising whether or not he is authorized to accept service of the Amended Complaint on behalf of Defendant DOCCS. If defense counsel will not accept service, Plaintiff is directed to serve a copy of that Amended Complaint upon Defendant DOCCS pursuant to Rule 4 of the Fed.R.Civ.P., and file an affidavit of service thereafter. Defendant DOCCS is directed to file an answer thereafter pursuant to Rule 12; and it is further

**ORDERED** that, upon the filing of an Amended Complaint and Defendant DOCCS'

response to that Amended Complaint, chambers will schedule a pretrial conference, at which

time counsel are directed to appear with settlement authority, and in the event that the case does

not settle, trial will be scheduled at that time.

Dated: March 24, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge